# Matter of AYUDA, Applicant

Request for Recognition

*Decided November 20, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

When assessing an organization's application for recognition, the Board of Immigration Appeals makes an individualized determination whether the applicant's fees qualify as "nominal charges" and whether its fee structure is true to the goal of providing competent low-cost legal services. *Matter of American Paralegal Academy, Inc.*, 19 I&N Dec. 386 (BIA 1986), clarified.

BEFORE: Board Panel: NEAL, Chairman; ADKINS-BLANCH, Vice Chairman; HOLMES, Board Member.

NEAL, Chairman:

The Falls Church office of Ayuda has applied for recognition pursuant to 8 C.F.R. § 1292.2(a) (2014).[1] A copy of the application was served on the appropriate offices of the Department of Homeland Security ("DHS"), which has not responded to the request for a recommendation regarding the application. The application for recognition will be approved.

According to the application for recognition, the applicant, a nonprofit organization, offers immigration and family law assistance, as well as social services, to low-income immigrants. The applicant organization provides its legal services through licensed attorneys and seeks partial accreditation for one representative.

To be recognized, a nonprofit organization established in the United States must show that it makes only "nominal" charges, assesses no excessive membership dues for persons given assistance, and has at its disposal adequate knowledge, information, and experience in immigration and nationality law and procedure. 8 C.F.R. § 1292.2(a); *see also Matter of EAC, Inc.*, 24 I&N Dec. 556, 557−58 (BIA 2008).

---

[1] Ayuda's principal office, which is located in Washington, D.C., was recognized by the Board in 1979. An organization must file a separate application for recognition of each branch office. *Matter of Florida Rural Legal Services, Inc.*, 20 I&N Dec. 639, 640 (BIA 1993).

We are satisfied that the applicant has established that it is a nonprofit social service organization dedicated to serving the low-income immigrant community. Its experienced attorney staff has adequate knowledge in immigration and nationality law, as well as access to online and print legal resources. The organization does not assess membership dues, but its list of charges for immigration legal services includes fees ranging from a couple of dollars for ministerial services to more than a thousand dollars for complex litigation. The only concern raised by this application is whether the applicant's charges for legal services are nominal in accordance with 8 C.F.R. § 1292.2(a)(1).

We last discussed the meaning of "nominal charges" in *Matter of American Paralegal Academy, Inc.*, 19 I&N Dec. 386 (BIA 1986). At that time, we concluded that nominal charges are not defined in terms of specific dollar amounts. Rather, the term contemplates that a recognized organization would charge very small fees or "something existing in name only as distinguished from something real or actual." *Id.* at 387. Since there is no set calculation or arithmetical table to ascertain whether fees are nominal, we analyze each application for recognition on its own facts, relying on the information that the applicant organization and its local DHS offices have provided. The mere fact that an organization's fees "may be substantially less than those charged by law firms is not a proper standard for consideration." *Id.* The fees must be consistent with the purpose and spirit of the recognition and accreditation program, which is to provide competent immigration services to low-income and indigent persons. *Matter of Baptist Educational Center*, 20 I&N Dec. 723, 735 (BIA 1993).

In the almost 30 years since we issued *Matter of American Paralegal Academy, Inc.*, the landscape of legal representation in immigration matters has changed significantly, particularly for nonprofit organizations. The evolution of immigration law, the emerging pressure to specialize within the field, and the limited availability of pro bono legal services in the communities that need them most make recognized organizations even more valuable than in the past. The confluence of these factors puts increasing administrative and financial strain on the ability of nonprofit organizations to provide affordable legal services to underserved populations. Juxtaposed to these changes are both the rising demand for competent legal services and a corresponding increase in opportunities for unscrupulous, unlicensed individuals to prey on the poorest of those seeking legal advice. In short, the need for representation has increased, but the availability of trustworthy low-cost and no-cost legal services has not.

Not surprisingly, client fees may play a greater role today in the budgeting process of nonprofit organizations than they did three decades

ago. For that reason, our long-standing definition of "nominal charges" has recently created some confusion for new applicants for recognition. Given the changing realities of immigration practice and client fees, we now update and clarify our interpretation of the term "nominal charges" for recognition applications.

First, the word "nominal" as a term of art is intentionally vague, and "nominal fees" have never been specifically defined. *See* Representation and Appearance, 60 Fed. Reg. 57,200, 57,200 (proposed Nov. 14, 1995) (Supplementary Information). There is no "one-size-fits-all" mathematical formula that can account for the discrepant fees charged in the legal services marketplace, which depend on such wide-ranging factors as geography, client demographics, availability of services, and local overhead costs for service providers. Also, mechanically applying a static method of computation, without regard for organizational idiosyncrasies and exigencies, would certainly exclude worthy nonprofit organizations from recognition. For example, a modest fee in one locale may be considered costly in another; but a higher fee may be appropriate for the organization's location or the special needs of the population it serves. Given the considerable breadth of communities, missions, and configurations of nonprofit organizations, an individualized assessment is necessary to determine whether an applicant's fee structure complies with the letter and spirit of the regulations' nominal charges requirement. In fact, such case-by-case adjudications give us greater flexibility and discretion to approve those applicants deserving of recognition.

It therefore follows that what constitutes nominal charges is entirely dependent on the circumstances of the applicant organization, including where it operates and what type of practice it has. This consideration of an organization's individual situation, however, does not mean there are no guidelines for determining what constitutes nominal charges. For example, a nominal charge can never be the actual dollar value of the service; it must always be something substantially less. Furthermore, while fees may be adjusted to help offset some of the organization's actual costs, the fee schedule must be oriented to accommodate the client's ability to pay. The fee structure must be true to the goal of providing competent low-cost legal services and may not be designed simply for the purpose of financially sustaining or serving the interests of the organization. *See Matter of EAC, Inc.*, 24 I&N Dec. at 557 ("[S]ome reputable organizations seek recognition of their agencies . . . not for the purpose of providing adequate legal representation to aliens who cannot afford private attorneys, but rather as a means to obtain government endorsement of their efforts to provide aid, education, and other services to the immigrant population. The recognition and accreditation process is not designed for this purpose.");

Representation and Appearance, 60 Fed. Reg. at 57,200 (stating that the nominal fees requirement exists to ensure that "recognized organizations are in fact charitable" and "are serving low-income or indigent clients") (Supplementary Information).

In addition, the application as a whole must persuade us that the organization truly charges all its clients nominal fees for immigration services.[2] Unlike a law firm, a recognized organization cannot charge actual costs or market fees for legal services; nor may it require some clients to pay full market fees and charge others reduced or nominal fees. As we held in *Matter of American Paralegal Academy, Inc.*, 19 I&N Dec. at 388, by allowing a recognized organization to charge nominal fees, the regulations did not intend to provide "a means by which those who are able to pay for assistance help off-set the expenses of those who cannot." Although a nonprofit organization may expect clients with larger incomes to contribute more based on a sliding fee scale, none of its clients may be charged more than nominal fees. *See* Representation and Appearance, 60 Fed. Reg. at 57,200 (noting that the purpose of recognizing organizations is to address the need for pro bono representation) (Supplementary Information); *see also Matter of Baptist Educational Center*, 20 I&N Dec. at 735. If we are not confident that nominal fees will be charged in every instance, the application for recognition will not be approved.

Finally, to demonstrate that it makes nominal charges, an applicant organization should provide its budget, its sources of funding or financial support, and a list of its fees. The applicant should also describe how it determines its charges for immigration legal services. The more information and documentation the application for recognition includes, the better able we are to assess whether the organization's charges are nominal. We will not approve an application with vague or incomplete information about an organization's fees, budget, or funding.

As a practical matter, the Board will consider certain factors when analyzing whether an applicant's charges are nominal. These factors include but are not limited to: (1) the type of clerical services offered (translations, notarizations, or fingerprints); (2) the type and scope of legal representation (providing a consultation, filing a form with the DHS, appearing at an interview, or litigating complicated issues in

---

[2] A request for recognition is a continuing application, so an organization has the obligation to continue meeting the requirements for recognition, including charging only nominal fees to its clients. *See* 8 C.F.R. § 1292.2(b). Accordingly, the organization should be aware that any increases to its fee schedule must still comport with the requirement that the fees it charges be nominal.

Immigration Court or before the Board); (3) the manner of delivery of legal services (office type and location, use of telecommunications); (4) the fees imposed, if any, for each visit, consultation, clerical item, or service (charges per office visit, per page for translations, or per stage of representation); (5) the actual costs to provide such services in a particular geographic area (rural community or major metropolitan area); and (6) the circumstances under which the organization will waive fees for clients who are unable to pay for services, adjust fees based on the client's income,[3] and assess fees on an individual or family basis.[4]

The applicant is located in the Washington, D.C., metropolitan area. The list of charges for the organization's immigration legal services shows that fees vary depending on the location where the services are to be performed and on the type and complexity of the legal services offered. The fees for basic services are modest, and the organization adjusts its fees for more complex services (such as court appearances, applications for courtroom relief, and appellate work), according to where its clients fall within the Federal poverty guidelines. The organization clearly explains its fee waiver policy and indicates that no individual will be denied services for inability to pay. Moreover, the organization's budget and funding demonstrate that it is substantially supported by grants and is not dependent primarily on client fees for its operations.

Considering the entire application for recognition, we are persuaded that the applicant organization imposes only nominal charges for its immigration legal services. The application for recognition will therefore be approved. Any pending application for accreditation will be addressed by separate order, because the approval of recognition does not automatically authorize an individual associated with the organization to practice before the Board, the Immigration Courts, or the DHS. *See* 8 C.F.R. § 1292.2(d).

**ORDER:** The application for recognition is approved.

---

[3] Organizations may use the Federal poverty guidelines to assess a client's ability to pay. *See* Asst. Sec'y for Planning and Evaluation, U.S. Dep't of Health & Human Services, 2014 Federal Poverty Guidelines, http://aspe.hhs.gov/poverty/14poverty.cfm.

[4] Depending on the specifics of the organization, we expect the applicant to submit such fee-related documents as a fully developed fee schedule (with dollar amounts), a sample retainer agreement, a written fee waiver and/or sliding scale policy, a sample client handout regarding fees and fee waivers, and clear statements of funding and financial support on appropriate letterhead.